# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

FILED

FEB 15 2006

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By:_____
Deputy Clerk

TERRY LAMONT CAMPBELL, )
)
Petitioner, )
)
v. ) **Case No. CIV 03-048-S**
)
**STATE OF OKLAHOMA,** )
)
Respondent. )

## FINDINGS AND RECOMMENDATION

NOW before the Magistrate Judge is petitioner's petition for a writ of habeas corpus.

Petitioner, an inmate currently incarcerated at James Crabtree Correctional Center in Helena,

Oklahoma, attacks his conviction in Pittsburg County District Court Case Number CF-2000-

767 for Trafficking Illegal Drugs, After Former Conviction of a Felony. He sets forth the

following grounds for relief:

I.      Insufficient evidence existed to convict Mr. Campbell.

II.     The trial court erred in overruling defense counsel's motion for a
        mistrial.

III.    The trial court erred by allowing the prosecution to violate the rule of
        sequestration.

Respondent concedes that petitioner has exhausted his state court remedies for the

purpose of federal habeas corpus review and has submitted the following records to the court

for consideration in this matter:

A.      Petitioner's direct appeal brief.

B.      The State's brief in petitioner's direct appeal.

C.    Summary Opinion affirming petitioner's judgment and sentence. *Campbell v. State*, No. F-2001-791 (Okla. Crim. App. May 3, 2002).

D.    Jury Instruction Number 18 in Case Number CF-2000-767 stating the three elements of the crime of Trafficking in Illegal Drugs.

## Ground I

Petitioner alleges the evidence was insufficient to convict him of Trafficking in Illegal Drugs. The Court of Criminal Appeals denied relief on this claim in petitioner's direct appeal, finding that "a rational trier of fact could find, beyond a reasonable doubt, that [petitioner] actually and constructively possessed at least five grams of crack cocaine." *Campbell v. State*, No. F-2001-791, slip op. at 2 n.1 (Okla. Crim. App. May 3, 2002). The respondent asserts the Oklahoma Court of Criminal Appeals considered and found no merit in this issue, and under the revised federal habeas corpus statutes, habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

2

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court has repeatedly emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime. The three elements of Trafficking in Illegal Drugs are (1) knowing, (2) possession, (3) five (5) grams or more of crack cocaine. *See* Okla. Stat. tit. 63, § 2-415 (Supp. 1999).

The record shows that Randall Peters, the principal of an alternative school in McAlester, Oklahoma, testified that on at least eight different dates, starting in November 2000, he saw petitioner park his vehicle in front of the school (Tr. 113-15, 126-27, 129, 133-34). Petitioner would look into abandoned cars parked on the street and sometimes briefly

3

would enter a car and then run into the woods (Tr. 114-15). Mr. Peters observed that petitioner would begin to walk toward the woods, but then would start running (Tr. 115, 133). After petitioner went into the woods, the top of a cedar tree would shake as though someone were climbing it (Tr. 115, 131-32). After less than five minutes, petitioner then would run out of the woods, get into his car, and leave (Tr. 115). On one occasion petitioner was accompanied by another man, and both went into the house across the street (Tr. 126).

Scott Satterfield, the school janitor, saw petitioner park his vehicle, look around, exit the vehicle, walk down the street, and then run into the woods (Tr. 139-41). The cedar tree shook after petitioner entered the woods (Tr. 146). In November and December 2000, Satterfield watched petitioner do this eight to twelve times (Tr. 141). On two occasions, another person was with petitioner, but only petitioner entered the woods (Tr. 144-45). Mr. Satterfield also saw petitioner go to the house across the street, but Satterfield did not see petitioner enter the house (Tr. 151). Petitioner also was seen looking into parked cars and either getting into the cars or looking in the trunks, and sometimes he did not go into the woods (Tr. 150-51).

On December 6, 2000, Mickey Virden, an investigator with the district attorney's office, set up surveillance on the house across the street from the school, but he did not see anything of importance (Tr. 163, 195-96). On December 7, 2000, Virden went into the wooded area and followed a trail to a cedar tree (Tr. 197-98). Hanging on the tree was what appeared to be a red thermos or canister about six to eight feet off the ground (Tr. 198). Inside the canister, which actually was a welding rod keeper, was blue paper similar to a shop towel, and a substance the color of peanut brittle enclosed in two clear plastic bags (Tr.199, 206). Virden recognized the substance as crack cocaine and called his partner Kevin Hearod

4

(Tr. 199-200). When Hearod arrived, they put the canister back in the tree and set up surveillance with Chris Trousell, another investigator for the district attorney's office (Tr. 200-01, 243).

Virden saw petitioner park and exit his car, walk around it for 20 to 30 seconds, and then put on a black sweatshirt (Tr. 204-05). Petitioner, who was wearing brown leather gloves, acted as though he were going to get back into his car, but then he walked away, picked up his pace, and came down the trail in the woods (Tr. 205-06). When petitioner got into the thicket, Virden still could see a shadow or outline of a man (Tr. 206). Virden observed the man go to the cedar tree, and Virden saw a black sleeve and brown work glove grab the canister and then return it to the tree about 15 to 30 seconds later (Tr. 206). Virden stepped through the trees and saw petitioner turn and jump (Tr. 208). Virden followed him, told him to get on the ground, and then handcuffed him (Tr. 208-09). Two pieces of crack cocaine, weighing more than 24 grams, were found next to petitioner (Tr. 215, 277, 281-82). Only petitioner and the law enforcement officers were in the woods at the time of the arrest (Tr. 216-18).

Petitioner testified that his half brother and the half brother's girlfriend lived in the house across the street from the school (Tr. 358). If his relatives did not answer the door when he knocked, he would run into the woods to urinate (Tr. 358). He testified that he used to urinate behind the house, but moved that activity to the woods when his brother's girlfriend caught him using the yard as a toilet (Tr. 359). Petitioner told the jury he had a problem with urinary frequency caused by an accident at work (Tr. 360). He did not know the medical name for his problem and was not taking any medication for the condition (Tr. 363-64). He claimed he was urinating in the woods on the day in question when he raised

5

his hand to wave at someone named Natasha (Tr. 360). He stated he was going toward Natasha when the police apprehended him (Tr. 360). He further testified had not gone far enough in the woods to reach the cedar tree and canister, because he did was terribly allergic to poison ivy and did not want to risk coming into contact with it (Tr. 365). Petitioner had no explanation for the school principal's testimony of seeing the cedar tree shake whenever petitioner went into the woods (Tr. 366).

In Oklahoma constructive possession of a controlled substance can be shown by the fact that the accused "had knowledge of its presence and the power or intent to control its disposition or use." *Doyle v. State*, 759 P.2d 223, 224 (Okla. Crim. App. 1988) (citations omitted). "When controlled dangerous substances are found in a place where the accused has exclusive access, then knowledge, dominion, and control may be inferred from these circumstances alone." *Id.* (citing *Miller v. State*, 579 P.2d 200, 202 (Okla. Crim. App. 1978)).

Petitioner argues that the Court of Criminal Appeals' factual findings were erroneous. The Summary Opinion stated that "Investigator Virden observed [petitioner] remove the canister with crack cocaine from the tree and replace it." *Campbell*, slip op. at 2 n.1. Petitioner contends Virden testified that he lost sight of petitioner, but saw "a hand in the tree which grabbed the canister and then a black sleeve with a brown work glove place it back in the tree" (Tr. 206). Petitioner also takes issue with the Summary Opinion's statement that "Officer Virden found crack cocaine on the ground next to [petitioner] at the time of the arrest," *Campbell*, slip op. at 2 n.1, when Investigator Trousell's testimony was that the drugs were on the ground next to the tree.

State-court decisions which are not "contrary to" clearly established Supreme Court

6

law can be subjected to federal habeas relief only if they are not merely erroneous, but "an unreasonable application" of clearly established federal law, or based on "an unreasonable determination of the facts." *Early v. Packer*, 537 U.S. 3, 7-8 (2002) (citing 28 U.S.C. § 2254(d)). Here, the court finds that, while the Court of Criminal Appeals' statement of the facts was not a precise summary of the testimony, that court's conclusions are is supported by the facts presented at trial.

After careful review of the record, the court finds the evidence was sufficient under the standard of *Jackson v. Virginia*. The Court of Criminal Appeals' determination of this issue was consistent with federal law, and the appellate decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This ground for habeas relief fails.

## Ground II: Motion for Mistrial

Petitioner alleges the State introduced an evidentiary harpoon when Officer Virden was asked by the prosecutor how he knew petitioner, when he first had contact with petitioner, and who was the subject of surveillance. Officer Virden stated that he knew petitioner "from talk of other officers" (Tr. 164). The trial court instructed the jury to disregard the statement (Tr. 169). Virden also testified that he was working surveillance because the school principal had reported suspicious activity in front of the school (Tr. 173). The court again did not grant a mistrial, but took a recess to allow the prosecutor to talk with Virden about the responsiveness of his answers (Tr. 175).

The Court of Criminal Appeals found that "Investigator Virden's statement was not an evidentiary harpoon because it was made in response to a direct question and was, therefore, not voluntary." *Campbell*, slip op. at 2 n.2. Petitioner argues the trial court erred

7

in denying his motions for mistrial, because, but for the evidentiary harpoons, he could not have been found guilty. The respondent alleges this claim is a state law issue that is not cognizable in federal habeas review.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (citing *Teague v. Looney*, 268 F.2d 506 (10th Cir. 1959)). Here, the court finds petitioner has failed to present an argument supporting federal habeas relief.

## Ground III: Sequestration

Finally, petitioner argues the trial court erred by allowing the prosecution to violate the Oklahoma rule of sequestration, Okla. Stat. tit. 12, § 2615. Defense counsel invoked the rule (Tr. 156), but the State allowed its witness, Officer Mickey Virden, to remain in the courtroom during the testimony of Randall Peters and Scott Satterfied. Defense counsel then moved to exclude Officer Virden as a witness for the State (Tr. 158). Defense counsel subsequently enlarged his motion to exclude Officer Hearod and Agent Troussel, because they stayed in the courtroom with Virden and allegedly discussed their testimony (Tr. 185).

On direct review, the Court of Criminal Appeals found the rule of sequestration was not violated:

> Although the State did not affirmatively designate Investigator Virden

8

as the lead case agent when defense counsel invoked the rule of sequestration, the record clearly indicates that he was the State's lead case agent. The trial court was made aware of the alleged violation, heard arguments from the parties, but permitted Investigator Virden to testify despite remaining in the courtroom. Further, the trial court was also aware that Investigator Virden spoke with Detective Hearod and Agent Trousell during recess. Both parties, as well as the trial judge, examined all three men in camera regarding their conversation. The record reflects that they did not discuss their trial testimony and supports the trial court's decision permitting them to testify.

*Campbell*, slip op. at 2 n.3. Again, the trial court's ruling on this issue is a matter of state law that is not cognizable in this action. *See Estelle*, 502 U.S. at 67-68.

**ACCORDINGLY,** the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 72.1(C), the parties are given ten (10) days from being served with a copy of these findings and recommendations to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this $\underline{15^{th}}$ day of February 2006.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

9